O

CASE CLOSED

# United States District Court
# Central District of California

| | |
|---|---|
| NOVICE M. COLLINS, individually and on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>       v.<br><br>U.S. BANK, NATIONAL ASSOCIATION; DOES 1–25, inclusive,<br><br>              Defendants. | Case No. 2:14-cv-07726-ODW(JPRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [21]** |

DOCUMENT ENTRY NO. 30 IS HEREBY **STRICKEN**.

## I.   INTRODUCTION

Plaintiff Novice M. Collins filed this one-count putative class action Complaint against Defendant U.S. Bank, National Association ("U.S. Bank") alleging a violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 ("UCL"). (ECF No. 3 ["Compl."].)  Pending before the Court is U.S. Bank's Motion to Dismiss the Complaint.  (ECF No. 21.)  Collins, a former mortgagor, claims that U.S. Bank's lender-placed insurance ("LPI") is deceptive and unlawful because the LPI premiums charged to her escrow account were more than necessary to insure her property.  The Court, having considered the record, applicable law, oral argument, and the parties'

1    briefs, hereby **GRANTS** U.S. Bank's Motion to Dismiss.  (ECF No. 21.)

2                          **II.    FACTUAL BACKGROUND**

3         Collins formerly owned real property in Bakersfield, California encumbered by

4    a mortgage serviced by U.S. Bank.  (Compl. ¶ 3.)  Collins alleges that U.S. Bank uses

5    a standard deed of trust for all mortgage loan contracts it services and the standard

6    form contains the same or substantially similar provision regarding LPI.  (*Id.* ¶ 8.)

7    The U.S. Code defines LPI as "hazard insurance coverage obtained by a servicer of a

8    federally related mortgage when the borrower has failed to maintain or renew hazard

9    insurance on such property as required of the borrower under the terms of the

10   mortgage."  12 U.S.C. § 2605(k)(2).  The LPI provision in Collins' deed of trust reads

11   as follows:

12            4. Fire, Flood and Other Hazard Insurance.  Borrower shall

13            insure all improvements on the Property . . . against any

14            hazards, casualties, and contingencies, including fire, for

15            which Lender requires insurance[.]   Borrower shall also

16            insure all improvements on the Property . . . against loss by

17            floods[.]

18            . . .

19            7.  If Borrower fails to perform any other covenants and

20            agreements contained in this Security Instrument . . . *then*

21            *Lender may do and pay whatever is necessary to protect the*

22            *value of the Property and lender's rights in the Property,*

23            *including payment of . . . hazard insurance*[.]  Any amounts

24            disbursed by lender under this paragraph shall become an

25            additional debt of Borrower and be secured by this Security

26            Instrument.

27   (Compl. ¶ 8 [emphasis added].)  U.S. Bank hires third-party LPI vendors to provide

28   this hazard insurance and then shifts the cost to its customers accordingly.  (*Id.* ¶ 14.)

1    Collins does not identify the third-party vendor that provided her LPI nor does she

2    allege when the LPI was first imposed.

3         Collins alleges that U.S. Bank's LPI practice violates the UCL for two reasons.

4    The first reason is that "the premium charged by Defendant to Class Members was

5    higher than the amount that was 'necessary' to protect Defendant's interest in the

6    collateral." (*Id.* ¶ 10.) The second reason is that U.S. Bank "misrepresented to

7    Plaintiff and other Class Members the true cost of the replacement hazard insurance."

8    (*Id.*) According to Collins, the LPI premiums are higher than necessary because: (1)

9    U.S. Bank charges its customers for the LPI vendors' administrative overhead costs

10   even though U.S. Bank's customers already pay U.S. Bank for these exact services

11   and the deed of trust prohibits such fee shifting (*id.* ¶¶ 11, 14–15); (2) U.S. Bank

12   allows LPI vendors to charge its customers higher-than-market rates because U.S.

13   Bank receives cash payments and incentives from the LPI vendors (*id.* ¶¶ 15–16); and

14   (3) U.S. Bank could continue paying the defaulting customers' existing insurance

15   premium at a fraction of the cost (*id.* ¶ 24).

16        Collins argues that U.S. Bank is not concerned with the lowest cost to its

17   consumers but rather its own financial rewards from LPI vendors in the form of

18   kickbacks. (*Id.* ¶ 16.) Collins alleges that U.S. Bank required her and other class

19   members to pay for unlawful and deceptive LPI premiums "since 2008, or earlier."

20   (*Id.* ¶ 9.) Collins specifically alleges that she "paid these charges and thereby suffered

21   a financial injury for which restitution from U.S. Bank is required." (*Id*. ¶ 3.) U.S.

22   Bank allegedly charged Collins LPI premiums between $967.00 and $1,440.00

23   annually while comparable market rates were one-third the cost. (*Id.* ¶ 23.f.)

24        Collins seeks to certify a class of "All California mortgage borrowers who paid

25   U.S. Bank for force placed hazard insurance during the four years preceding the filing

26   of the Complaint (the 'Class Period') and who did not receive a full refund." (*Id.*

27   ¶ 27.)

28   / / /

1

## III.   LEGAL STANDARD

2      Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for

3  failure to allege "enough facts to state a claim to relief that is plausible on its face."

4  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

5  when the plaintiff pleads factual content that allows the court to draw the reasonable

6  inference that the defendant is liable for the misconduct alleged.  The plausibility

7  standard is not akin to a 'probability requirement,' but it asks for more than a sheer

8  possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662,

9  678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6)

10  motion, the Court "accept[s] factual allegations in the complaint as true and

11  construe[s] the pleading in the light most favorable to the non-moving party."

12  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

13      The Court is not required to "assume the truth of legal conclusions merely

14  because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d

15  1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted).  Mere

16  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

17  motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal

18  quotation marks and citations omitted).  "If a complaint is accompanied by attached

19  documents, the court is not limited by the allegations contained in the complaint.

20  These documents are part of the complaint and may be considered in determining

21  whether the plaintiff can prove any set of facts in support of the claim."  *Durning v.*

22  *First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citations omitted).

23  The Court may consider contracts incorporated in a complaint without converting a

24  motion to dismiss into a summary judgment hearing.  *United States v. Ritchie*, 342

25  F.3d 903, 907–08 (9th Cir. 2003).

26      If the Court grants a motion to dismiss, it must determine whether to allow the

27  plaintiff leave to amend.  Although leave to amend "shall be freely given when justice

28  so requires," Fed. R. Civ. P. 15(a), leave to amend may be denied if the moving party

1    has acted in bad faith, or if allowing amendment would unduly prejudice the opposing

2    party, cause undue delay, or be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512

3    F.3d 522, 532 (9th Cir. 2008). Amendment would be futile if "the pleading could not

4    possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122,

5    1130 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

6                                    **IV.    DISCUSSION**

7         U.S. Bank's Motion to Dismiss raises multiple arguments as to why Collins'

8    one-count Complaint should be dismissed. (ECF No. 21 ["Def. Br."].) Collins filed

9    an Opposition Brief (ECF No. 23 ["Opp. Br."]) and U.S. Bank a Reply (ECF No. 28

10   ["Rep. Br."]). The Court heard arguments on February 2, 2015. The Court will only

11   address U.S. Bank's first argument as it is dispositive of the entire case—Collins lacks

12   standing under the UCL and therefore failed to state a claim upon which relief can be

13   granted.

14   **A.    UCL Standing**

15        While offering several alternative theories of liability, Collins' Complaint raises

16   only one cause of action—a violation of the UCL. Standing to bring a claim under the

17   UCL is limited to a person "who has suffered injury in fact and has lost money or

18   property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To

19   establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation

20   of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

21   (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business

22   practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246

23   P.3d 877, 885 (Cal. 2011) (original emphasis); *see also Rubio v. Capital One Bank*,

24   613 F.3d 1195, 1203–04 (9th Cir. 2010). The California Supreme Court instructs that

25   the two prongs of injury—"injury in fact" and "lost property or money"—will often

26   overlap. *Kwikset*, 246 P.3d at 885–86. When the two overlap, a plaintiff must

27   "demonstrate some form of economic injury," which is "substantially narrower than

28   federal standing under article III, section 2 of the United States Constitution[.]" *Id.* at

1    886.

2          At issue here is Collins' standing to bring her UCL cause of action.  Collins'

3    Complaint is quite clear in alleging that she personally paid LPI premiums to U.S.

4    Bank.  Collins first alleges that she "*paid* [LPI] charges and thereby suffered a

5    financial injury for which restitution from U.S. Bank is required."  (Compl. ¶ 2

6    [emphasis added].)  She later alleges that she "was injured and *lost money* by the acts

7    of U.S. Bank[.]" (*Id.* ¶ 30 [emphasis added].)  Collins proposed a class comprising of

8    "All California mortgage borrowers who *paid* U.S. Bank for force placed hazard

9    insurance . . . ." (*Id.* ¶ 27 [emphasis added].)

10        U.S. Bank responds that Collins never made a single payment on her mortgage

11   that included LPI premiums.  (Def. Br. at 1.)  According to U.S. Bank, "Collins has

12   not made any Property-related payments since February 2009" and "U.S. Bank first

13   lender-placed a hazard insurance premium on [Collins' property] in July 2009[.]" (*Id.*

14   at 3, 7.)  U.S. Bank directs the Court's attention to numerous bank documents and

15   foreclosure notices that support its claim that Collins never made any monthly

16   mortgage payments that included LPI premiums.[1] (*Id.* at 4.)  Collins responds in the

17   most unusual way:  "U.S. bank disputes that Collins never paid the LPI premiums,

18   even though her home was sold in foreclosure and all monies owed to U.S. Bank,

19   *including* all LPI premiums, were satisfied at the foreclosure sale."  (Opp. Br. at 2

20   [original emphasis].)   She argues that "LPI is hazard insurance and is therefore paid

21   out of the net proceeds of the foreclosure sale . . . [and] had Collins not been

22   overcharged for LPI, the sale of the property for $139,436.35 would have exceeded

23   the total sum due U.S. Bank and would have resulted in net sums due Collins." (*Id.* at

24

25   [1] U.S. Bank requests the Court take judicial notice of numerous bank statements and mortgage
     documents related to LPI premiums and Collins' default.  (ECF No. 22 ["RJN"].)  These documents
26   are related to and referenced in Collins' Complaint, and Collins does not question the documents'
     authenticity.  Therefore, the documents are properly subject to judicial notice.  *Knievel v. ESPN*, 393
27   F.3d 1068, 1076 (9th Cir. 2005). The Court also notes that it may consider extrinsic evidence to
     determine standing.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1142–43 (9th Cir.
28   2003).

3.)   Collins alleges that "[b]ut for the overcharging for LPI, there would plainly be proceeds payable to the Plaintiff after the sale of her home."  (*Id.* at 4.)

Collins' Complaint unequivocally alleges that she "paid" for the LPI charges, yet when U.S. Bank challenges this allegation with judicially-noticeable evidence, Collins appears to abandon her original position.  Her Opposition Brief never once argues that Collins made a monthly payment that included LPI premiums.  Collins' counsel admitted at the February 2, 2015 hearing that Collins never made a single monthly payment that included LPI premiums.  Instead, Collins raises a new theory of "paid" based on a foreclosure surplus—the foreclosure sale price was artificially high because it included LPI charges, and thus she is entitled to a surplus.  Because Collins' understanding of "paid" does not include the actual transfer of money to U.S. Bank, the Court must decide whether Collins' foreclosure-surplus theory constitutes "lost money" to satisfy UCL standing.

There "are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary."  *Kwikset*, 246 P.3d at 885–86.  Collins' foreclosure-surplus theory does not fit neatly into any of the categories of economic injury from *Kwikset*.  Collins' theory appears closest to option 3—"be deprived of money or property to which he or she has a cognizable claim."  *Id.*  There is no dispute that Collins did not pay money to U.S. Bank for LPI premiums.  By claiming that "[b]ut for the overcharging for LPI, there would plainly be proceeds payable to the Plaintiff after the sale of her home" (Opp. Br. at 4), Collins is necessarily asserting that she has a restitutionary interest—a cognizable claim—to U.S. Bank's unjust enrichment following the foreclosure sale.

This theory, however, does not establish economic injury.  At the foreclosure

sale, U.S. bank made a full credit bid of $139,436.35 which was the exact amount of Collins' unpaid debt.  (RJN Ex. 9.)  Collins' original mortgage was for $85,606.  (RJN Ex. 3.)  "Under the full credit bid rule, a foreclosing lender that has purchased the real property security for such a bid is precluded form pursing further claims to recoup its debt because the bid has established that the foreclosed security is equal in value to the debt, which therefore has been satisfied."  *Countrywide Home Loans, Inc. v. Tutungi*, 78 Cal. Rptr. 2d 203, 205 (Cal. Ct. App. 1998).  U.S. Bank's full credit bid of $139,436.35 was a transfer of funds from U.S. Bank to U.S. Bank.  U.S. Bank did not profit from the foreclosure sale as it was the seller and purchaser at the auction—it paid itself for the home.  U.S. Bank's full credit bid also extinguished its ability to recoup any further debt from Collins.  U.S. Bank released Collins from her six-figure debt in exchange for taking title to a home with a significantly lesser value—there are no "proceeds" and no money actually changed hands.

For Collins' theory to work, a third-party purchaser needed to pay U.S. Bank $139,436.35 at the foreclosure sale.  The $139,436.35 would not only extinguish the true value of Collins' debt but would also unjustly enrich U.S. Bank because U.S. Bank would profit by receiving payment from the third-party for the unlawful LPI premiums.  U.S. Bank would recover its true losses and then some.  Collins would have a "cognizable claim" to that unjust profit if it was not returned to her as a surplus.  *See Kwikset*, 246 P.3d at 886.  The situation at hand does not involve a third-party, but instead U.S. Bank acting as the buyer and seller in relinquishing all debt, whether lawful or unlawful.  U.S. Bank is not unjustly enriched by paying itself no matter how great the unlawful debt.  Collins did not suffer any economic injury as a result.  While Collins' foreclosure-surplus theory is clever, it is also wrong.  Collins failed to show that she suffered any economic injury to satisfy UCL standing.

Litigation over allegedly unlawful LPI tactics is nothing new for U.S. Bank or federal courts across the country.  *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014); *Coehn v. Am. Security Ins. Co.*, 735 F.3d 601 (7th Cir. 2013);

1    *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Cannon*

2    *v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013); *Ellsworth v. U.S.*

3    *Bank, N.A.*, No. 12-02506, 2014 WL 1218833 (N.D. Cal. March 21, 2014); *Jackson v.*

4    *U.S. Bank, N.A.*, No. 14-21252, 2014 WL 4179867 (S.D. Fl. Aug. 22, 2014);

5    *Perryman v. Litton Loan Servicing, LP*, No. 14-cv-02261, 2014 WL 4954674 (N.D.

6    Cal. Oct. 1, 2014).  Despite the breadth of recent case law, not a single case purports a

7    theory of economic loss based on foreclosure surpluses.  The relevant precedent

8    involves plaintiffs who *actually transferred money* to lending institutions for the

9    purposes of paying LPI premiums.  Collins engaged in no such conduct.

10    Lost property is also an economic injury that satisfies UCL standing.  *Kwikset*,

11    246 P.3d at 885.  There is no question that a home foreclosure constitutes lost

12    property.  *See Jenkins v. JP Morgan Chase Bank, N.A.*, 156 Cal. Rptr. 2d 912, 933

13    (Cal. Ct. App. 2013).  However, the loss-of-home theory for economic loss still

14    requires the plaintiff to allege and prove that the "economic injury [occurred] as a

15    result of the unfair competition."  *Kwikset*, 246 P.3d at 885 (internal quotation marks

16    omitted).  Collins does not allege that the foreclosure of her home was in any way

17    related to U.S. Bank imposing LPI premiums.  Her initial default on the mortgage

18    occurred before U.S. Bank charged her for any LPI premiums.  Collins' default and

19    subsequent foreclosure lacks any causation tied to U.S. Bank's allegedly unlawful

20    conduct, and therefore this theory of UCL standing is also rejected.

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

## V.   CONCLUSION

The Court concludes that Collins does not have standing to bring a cause of action under the UCL because she did not suffer any economic loss.  Without standing to bring her UCL cause of action, Collins failed to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  For the reasons discussed above, the Court hereby **GRANTS** Defendant U.S. Bank's Motion to Dismiss.  (ECF No. 21.)  Collins provided no indication that amending the Complaint is possible, and without an injury the Court concludes that granting Collins leave to amend would be futile.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).  This action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

February 3, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**